Ryan T. Earl
EARL & EARL PLLC
6126 W. State Street #203
Boise, ID 83703
Telephone: 208-890-0355
Fax: 719-269-8832
ISB# 8342 WSBA# 34007 CO#45910
enepllc@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DARIAN SHAYNE DANIEL,<br><br>               Plaintiff,<br><br>vs.<br><br>IDAHO DEPARTMENT OF CORRECTIONS, an Idaho political subdivision; CORIZON HEALTH, INC., a foreign corporation; JANET MITCHELL, PA, an employee of Corizon; JOHN DOES 1 through 14 (Unnamed Correction Officers); and JOHN DOES 15 through 20 (Unnamed Corizon Medical Providers) .<br><br>               Defendants. | Case No:<br><br>VERIFIED COMPLAINT |

COMES NOW the Plaintiff, DARIAN SHAYNE DANIEL, (hereinafter Mr. Daniel) by and through his attorney of record, Ryan T. Earl, of the law firm EARL & EARL, PLLC, and complains and alleges as follows:

**I. PLAINTIFF TO THIS ACTION**

1. Plaintiff, Mr. Daniels, was an inmate at the Idaho State Correctional Institute (ISCI), IDOC Number 18985, and was under the care and control of IDOC and other

defendants. Mr. Daniel was released from ISCI on February 23, 2017, and is currently on parole.

## II. DEFENDANTS IN THIS ACTION

2. Upon information and belief, Idaho Department of Correction is a political subdivision of the State of Idaho

3. Upon information and belief, **Corizon Health, Inc** (hereinafter Corizon) is a privately held for profit business incorporated under Delaware law whose principle place of business is in Brentwood, Tennessee. Acting under Color of State Law, the acts of Defendant Corizon, deprived Mr. Daniel of his rights under the Eighth Amendment of the United States Constitution. Defendant Corizon had and has final authority in treatment policy, customs, and practice, concerning the acts in this instant action at bar. When Corizon engaged in these acts, they were acting as final policy maker and under Color of State Law and violated their constitutional duty to protect and provide adequate and proper medical care to those entrusted in their custody.

4. Upon information and belief, **John Does 1 through 14**, are ISCI prison correction officers that were on duty at the time Mr. Daniel was placed in the strip-cage when Mr. Daniel had multiple seizures and was injured. At this time, the names of these officers are unknown at the time of filing. Mr. Daniel reserves the right to amend his complaint upon learning of the identity of these correctional officers.

5. Upon information and belief, Janet Mitchell, PA, is an employee of Corizon and typically works in the Idaho State Correctional Center (ISCC) and was on duty on October 1, 2015, when Mr. Daniel was injured.

6. Upon information and belief, **John Does 15 through 20,** are Corizon employees that were on duty at the time Mr. Daniel was placed in the strip-cage when Mr. Daniel had multiple seizures and was injured. At this time, the names of these medical providers is unknown at the time of filing. Mr. Daniel reserves the right to amend his complaint upon learning of the identity of these correctional officers.

### III. JURISDICTION AND VENUE

7. This action arises under the Constitution of the United States, particularly the Eighth, and Fourteenth Amendments to the Constitution of the United States, and the law of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988. This action is brought for damages and other appropriate relief for violation of Mr. Daniel's civil rights under color of state law.

8. The court has jurisdiction over Mr. Daniel's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a). The court has jurisdiction over Mr. Daniel's state claims pursuant to 28 U.S.C. §1367. Venue is proper in this district pursuant to 28 U.S.C. §1391 (b).

### IV. PREVIOUS LAW SUITS

9. Mr. Daniel has never filed suit in Federal court, he has filed suit in Idaho State court, Canyon County case number CV-2014-8550-C, a personal injury case, and was the petitioner in a dissolution case in 1998, Canyon County case number CV-1998-0114.

### VI. FACTUAL ALLEGATIONS

10. Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

11. Mr. Daniel was an inmate, housed at the Idaho State Correctional Institution (hereinafter ISCI) and was released on parole on February 23, 2017.

12. Mr. Daniel has a well-documented history of epilepsy. Among the things that can trigger Mr. Daniel's seizures is stress.

13. Mr. Daniel is able to tell that he is about to have a seizure before the seizure occurs.

14. On October 1, 2015, one of Mr. Daniel was already under considerable stress, with one of his daughters diagnosed as being terminally ill and another daughter was having a baby.

15. During dinner on October 1, 2015, Mr. Daniel was holding ice cream for another inmate, Andy Gallegos, when correctional officer J. Hernandez confiscated the ice cream.

16. Mr. Daniel was upset that his helping another inmate would result in the confiscation and verbally expressed his frustration.

17. CO Hernandez felt Mr. Daniel's verbal expressions arose to intimidation and issued Mr. Daniel a Disciplinary Offense Report (DOR), and sent Mr. Daniel to the "hole" for Mr. Daniel's apparent disrespect.

18. Mr. Daniel was taken to the detention area and placed in a strip-down cage. The strip-down cage is approximately the size of a phone booth (approximately 40 inches by 40 inches square by 8 foot tall) and is used to evaluate the inmate prior to placing the inmate into the hole.

19. Mr. Daniel was interviewed by Defendant Nurse Doe for a medical intake where Mr. Daniel informed her that he was under considerable stress and that his seizures were triggered by stress. Mr. Daniel informed Defendant Nurse Doe that he was going to have a seizure and needed to be removed from the cage.

20. During Mr. Daniel's medical intake, Defendant Nurse Doe left Mr. Daniel standing alone in the strip-down cage; completely unsupervised.

21. Mr. Daniel continued to sense a seizure coming on and yelled for help several times.

22. No one came to observe Mr. Daniel and he had his first seizure of the night.

23. When Mr. Daniel regained consciousness from his seizure, he noticed he was bleeding and his right-side hip was extremely painful.

24. Mr. Daniel again yelled for assistance without any further response.

25. Mr. Daniel then had his second unattended seizure.

26. When Mr. Daniel awoke from his second seizure, he was bleeding more, his hand and face were scraped up and bleeding, and his back and hip pain was excruciating.

27. Mr. Daniels could not move his legs because he was jammed into the bottom of the metal strip-cage.

28. Mr. Daniel yelled again for help; finally, after several hundred cries for help and several more minutes being unable to move and in extreme pain, a guard finally came in and called for the nurse.

29. The guard opened the cage, handcuffed Mr. Daniel then the guard and the nurse drug Mr. Daniel out of the cage.

30. Mr. Daniel could not straighten out his right leg because of the agonizing pain if he tried to move his leg.

31. Mr. Daniel was placed on a backboard and transported to medical, where he had to wait for over an hour to be seen by PA Mitchell.

32. PA Mitchell examined Mr. Daniel and ordered x-rays on Mr. Daniel's right hip for the next day and gave Mr. Daniel an order for three days of muscle relaxers.

33. PA Mitchell asked the nurse if PA Mitchell needed to write the memo for a wheelchair or if the nurse had to write the memo.

34. The nurse said that Mr. Daniel could not have a wheelchair inside "8 House," where the hole is located, but was allowed to use a wheelchair to get back to 8 House.

35. When Mr. Daniel arrived back at 8 House, he was ordered to stand on one leg while handcuffed, then had to bend to put his hands out of the small hole in the door to have his restraints removed.

36. In order to move from his bunk to his cell door, Mr. Daniel had to sit on the concrete floor, and scoot backwards, using his good leg from propulsion, because Mr. Daniel was not able to put any weight on or move his injured right hip and leg.

37. Mr. Daniel still suffers from pain and decreased mobility and is undergoing treatments in his right leg and hip as a result of being left unattended in the strip-cage while he had two seizures.

38. The guard asked Mr. Daniel if he could walk, Mr. Daniel said that he could not walk and wanted a wheelchair to be able to move around his cell.

39. The guard replied that 8 House is not handicap accessible and that he would need to be moved to another unit.

40. On or about October 2, 2015, Mr. Daniel was taken to medical in a wheelchair and received x-rays of his right hip. The x-rays did not show any broken bones; Mr. Daniels was diagnosed with soft-tissue damage.

41. Mr. Daniel's condition did not improve and to eat he had to drag himself to the cell door, balance his food tray on the toilet and eat while sitting on the floor. Due to the pain he could not balance himself and his food tray and return to his bunk to eat.

42. Medical personnel informed Mr. Daniel that a memo had been issued for him to receive a wheelchair and that Mr. Daniel would be moved to a handicap accessible cell in 15 House.

43. On October 5, 2015, Mr. Daniel was transported in a wheelchair to a handicap accessible cell in 15 House, but the wheelchair was not left with Mr. Daniel and was removed from his cell.

44. Mr. Daniel asked a 15 House guard why the wheelchair was removed and Mr. Daniel was told there was not a wheelchair memo. The following day, Mr. Daniel discussed the wheelchair situation with a Sergeant who brought a wheelchair to Mr. Daniel's cell. Mr. Daniel did not receive a wheelchair until October 6, 2015, six days after Mr. Daniel's injury requiring the use of a wheelchair.

45. On October 6, 2015, Mr. Daniel was allowed to take a shower, but was not allowed to sit in a shower chair or use a wheelchair to shower. When Mr. Daniel asked the guard why he was not allowed to use the handicapped shower, the guard reported that he was just following orders.

46. While he was incarcerated in 8 House, Mr. Daniel noticed that another inmate in 8 House, Inmate Stark, was sitting in a wheelchair inside his cell in 8 House, but Mr. Daniel was left to scoot on the floor to move within his cell without the assistance of a wheelchair.

47. On December 18, 2015, Mr. Daniel filed his Tort Claim Notice against IDOC for his personal injury.

48.     Mr. Daniel had significant challenges and delays in getting a consistent memo allowing a pusher for his wheelchair.

49.     Mr. Daniel was repeatedly moved between units that had handicap accessible bunks, but Mr. Daniel was not assigned to one of the handicap accessible bunks.

FIRST CLAIM FOR RELIEF

(Deprivation of Civil Rights – 42 U.S.C. § 1983)

(Doe Defendants 1 through 20)

50.     Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

51.     Mr. Daniel was an inmate under the care and control of Defendants during the relevant times of this case.

52.     Mr. Daniel was deprived of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution for deliberate indifference and cruel and unusual punishment.

53.     Mr. Daniel is entitled to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. This protection includes a right to timely and adequate medical care. Failure to provide timely and adequate medical care amounts to deliberate indifference to a prisoner's wellbeing and constitutes cruel and unusual punishment in violation of the Eighth Amendment. Recklessness with respect to the required standard of care can constitute "deliberate indifference" to a prisoner's medical needs under the Eighth Amendment. In this case, Defendants acted with deliberate indifference by failing to supervise Mr. Daniel in the strip-cage after Mr. Daniel alerted the Defendants that he was about to have an epileptic seizure.

54. Defendants knew or should have known that the strip-cage was an unsafe place for an inmate to have an epileptic seizure.

55. Mr. Daniel suffered a severe injury to his hip and remains in constant pain, walking with a limp, which is likely a permanent injury.

## SECOND CLAIM FOR RELIEF

(Negligent Supervision – Defendant IDOC and Defendant Corizon)

(Idaho State Law Claim)

56. Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

57. Defendants IDOC and Corizon have a duty to properly train and supervise its employees.

58. IDOC's correction officers and Corizon's employees were negligent in leaving Mr. Daniel unattended in a strip-cage, especially after Mr. Daniel told them that he was about to have a seizure.

59. Defendants IDOC and Corizon failed to properly train and supervise their employees.

60. As an actual and proximate result of IDOC's and Corizon's breach of its duty, Mr. Daniel suffered an injury and damages.

## THIRD CLAIM FOR RELIEF

(Negligence – Defendant IDOC and Defendant Corizon)

(Idaho State Law Claim)

61. Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

62. Defendants IDOC and Corizon have a duty to protect inmates from injury.

63. Defendants IDOC and Corizon breached their duty to protect Mr. Daniel from injury be leaving him unattended in the strip-cage after Mr. Daniel informed Defendants' staff that he was about to have a seizure.

64. Mr. Daniel's injury was directly and proximately caused by Defendant IDOC's and Defendant Corizon's breach of their duty.

65. Mr. Daniel suffered a severe injury and damages as a result of Defendant IDOC's and Defendant Corizon's breach.

## FOURTH CLAIM FOR RELIEF

(Respondeat Superior – Defendant IDOC and Defendant Corizon)

(Idaho State Law Claim)

66. Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

67. Under the law of Respondeat Superior, an employer is liable for a tort of its employees.

68. Doe Defendants 1 through 14 are employees of Defendant IDOC and Doe Defendants 15 through 20 are employees of Defendant Corizon.

69. Doe Defendants were negligent by leaving Mr. Daniel unattended in the strip-cage after being put on notice that Mr. Daniel was about to have a seizure.

70. Defendant IDOC and Defendant Corizon are vicariously liable for their employee's torts under Idaho State Law.

///

///

## FIFTH CLAIM FOR RELIEF

(Negligence – Doe Defendants 1 through 20)

71. Mr. Daniel incorporates the necessary facts, venue and jurisdiction allegations as if fully rewritten herein.

72. Doe Defendants 1 through 20 were put on notice by Mr. Daniel that he was about to have a seizure in a very dangerous place, the strip-cage.

73. Doe Defendants 1 through 20 had a duty to protect Mr. Daniel from injury because they put Mr. Daniel in a place where he could not protect himself from injury.

74. Doe Defendants 1 through 20 breached their duty to Mr. Daniel and were the actual and proximate cause of Mr. Daniel's injury.

75. Mr. Daniel has suffered a severe, and likely permanent injury to his hip.

## DEMAND FOR A JURY TRIAL

Mr. Daniel demands a trial by jury for all issues

## RIGHT TO AMEND

Mr. Daniel reserves his right to amend this Complaint to include additional causes of action and parties as they arise and are discovered through discovery.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Daniel prays for the following relief:

1. Awarding Mr. Daniel compensatory damages for past and future pain, suffering, embarrassment, humiliation, mental anguish and past and permanent impairment, including loss of earning capacity and reasonable value of all medical care and supplies; and a reasonable value of legal services that he needed and obtained by his attorneys.

2. Awarding Mr. Daniel of punitive damages against non-governmental persons for these Defendants' conduct that was intentional, reckless, malicious, or callously indifferent to Mr. Daniel's protected rights and needs. That the sum of which is not controlled by notice or administrative law either State or Federal but in the manifest discretion of this court and a jury.

3. Awarding Mr. Daniel prejudgment and post-judgment interest plus any reasonable costs of collection of the judgment.

4. Awarding attorney's fees, costs and other relief to which he is entitled.

Dated this 29th day of September, 2017.

_____/s/_____
Ryan T. Earl
Attorney for Plaintiff

## VERIFICATION

STATE OF IDAHO )
                       )ss
COUNTY OF ADA  )

DARIAN S. DANIEL, being first duly sworn upon oath, says:

That he has read the above foregoing Complaint; that he knows the contents thereof and believes that the facts stated herein are true.

_____
DARIAN S. DANIEL

SUBSCRIBED AND SWORN to before me this 25th day of September, 2017.

NOTARY PUBLIC FOR IDAHO

Residing at:
Commission Expires: 9-2-2021